**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**CHRISTOPHER J. JOHNSON,**

                       **Plaintiff,**

vs.                                        1:20-cv-1279
                                                      (MAD/TWD)

**THE CITY OF TROY and THE ESTATE OF**
**SERGEANT RANDALL C. FRENCH,**[1]

                       **Defendants.**

---

**APPEARANCES:**                                  **OF COUNSEL:**

**HARFENIST KRAUT & PERLSTEIN, LLP**     **NEIL S. TORCZYNER, ESQ.**
3000 Marcus Avenue, Suite 2E1              **STEVEN J. HARFENIST, ESQ.**
Lake Success, New York 11042
Attorneys for Plaintiff

**FITZGERALD MORRIS BAKER**              **COREY A. RUGGIERO, ESQ.**
**FIRTH, P.C.**                                     **STEPHANIE MCDERMOTT, ESQ.**
68 Warren Street                               **JOHN D. ASPLAND, ESQ.**
Glens Falls, New York 12801
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       Plaintiff commenced this action on October 16, 2020, seeking redress under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, alleging racial discrimination, hostile work environment, and constructive discharge. *See* Dkt. No. 1. Currently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 59.

### II. BACKGROUND

---

[1] Sergeant French passed away in 2020. *See* Dkt. No. 59-17 at 14 n.4.

Plaintiff is currently employed by the City of Troy Police Department (hereinafter, "Troy PD"). *See* Dkt. No. 66-1 at ¶ 1. Plaintiff began his employment with the Troy PD in 2007. *See id.* at ¶ 2. As of the date of his deposition on August 10, 2021, Plaintiff was a Detective with the Troy PD Detective Bureau, to which he had been assigned for approximately three months. *See id.* at ¶¶ 3-4. Prior to becoming a Detective with the Troy PD Detective Bureau, Plaintiff was a Community Police Officer with the Troy PD for approximately six-to-eight months. *See id.* at ¶ 5. Prior to working as a Community Police Officer, Plaintiff was assigned to the Special Operations Section (hereinafter, "SOS") under the Troy PD's Community Police for approximately one year, starting in March of 2019. *See id.* at ¶¶ 6-7.

Before coming to the Troy PD, Plaintiff worked for the City of Rensselaer Police Department for approximately one and a half years. *See id.* at ¶ 12. Plaintiff left the Rensselaer PD because the Troy PD is a larger department with more opportunity for advancement. *See id.* at ¶ 13. During his time with the Troy PD, Plaintiff has never been passed over for a promotion. *See id.* at ¶ 22.

In this action, Plaintiff alleges that, from some point during his first year of employment with the Troy PD (2007) until March 2020 when he transferred from the Troy PD's SOS to its Community Police Unit (hereinafter, "CPU"), he was subjected to a number of instances of harassment and discrimination based on his race. As will be discussed in more detail below, Plaintiff alleges the following instances of harassment and racially insensitive conduct:

> – the display of a Confederate flag sticker on the personal vehicle of one of Plaintiff's colleagues during his first year with the Troy PD (2007);
>
> – the presence of a Confederate flag belt buckle in the locker of one of Plaintiff's colleagues in 2007;

– an incident "in approximately 2013 into 2014," wherein "a picture of an African American female ... which had been altered to greatly exaggerate the size of her nose and lips" had been placed on the table in the roll call room;

– an incident in or about 2015 during a diversity training class where an outside African American instructor made the following statement: "Every time I turn on the TV I am reminded that I am a nigger every day."

– Plaintiff's removal from the Student Resource Officer position by Chief Owens in 2018;

– the cessation of talking by other detectives when Plaintiff would enter the room, on approximately two occasions, which occurred toward the end of Plaintiff's time with the Troy PD SOS; Dkt. No. 66-1 at ¶ 291;

– Sergeant French's July 2019 comment to Plaintiff that he "wonder[ed] what she looks like naked" in reference to a graduation photograph of Plaintiff's daughter; *id.* at ¶ 387;

– the following comment by Sergeant French in December 2019 in the presence of a civilian visitor while Plaintiff was sitting in his office with the lights off: "Chris is back there in the room in the dark.  Smile so we can see you;" *id.* at ¶ 393; Dkt. No. 1 at ¶¶ 59-60;

– Detective Jeffrey Hoover's December 2019 comment that the SOS unit's new patch "should be a spear and a piece of chicken;" Dkt. No. 66-1 at ¶ 407; Dkt. No. 1 at ¶ 62;

– Detective Hoover's March 2020 use of the phrase "a fuckin' nigger" in Plaintiff's presence while discussing his interactions with a detective from another agency; Dkt. No. 1 at ¶ 64; Dkt. No. 66-1 at ¶ 105.

– Detective Hoover's comment over the radio in March 2020 while the SOS was conducting drug buys in downtown Troy using a confidential informant, Plaintiff had parked in the middle of the alley in plain view of dealers and hindering what they were trying to accomplish, prompting Detective Hoover to say over the radio, "Yeah, they're looking at you because you're sitting in the middle of the alleyway;" Dkt. No. 66-1 at ¶ 283;

– a remark by Detective Hoover from an unknown date wherein he stated "Black guys date fat white women;" *id.* at ¶ 404;

– Detective Hoover's remark from an unknown date stating "Johnson, leave the white women alone, except for the fat ones;" Dkt. No. 1 at ¶ 87; Dkt. No. 66-1 at ¶ 406;

– Sergeant French's comment to Plaintiff from an unknown date that "You're always trying to be white by doing white people things," that "Black people don't do the things you do," and "Oh, Chris, you indulge in white people sports" while discussing the fact that Plaintiff had recently purchased a snowmobile and because Plaintiff enjoys ice fishing; Dkt. No. 66-1 at ¶¶ 396-402; Dkt. No. 1 at ¶ 87;

– Sergeant French's remark from an unknown date saying to Plaintiff, "Johnson, will you interview the suspect?  It seems like they like talking to you," where the suspect in question was Black; Dkt. No. 59-2 at 217-18; Dkt. No. 1 at ¶ 87.

– Sergeant French's remark from an unknown date stating "Hey, we're looking for a black male with a handgun.  Chris, tell your cousin to bring the gun back;" Dkt. No. 59-2 at 164-65.

– Sergeant French's remark from an unknown date stating "Oh, there was a shooting, two black males or whatever.  Chris, it's your people again." *Id.* at 165.

Following his transfer out of the SOS unit in March 2020, Plaintiff claims that he is no longer subject to racial harassment or a hostile work environment.

### III. DISCUSSION

**A.      Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"  *Id.* at

36-37 (quotation and other citation omitted).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986).  In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted).  Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(e).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.    Title VII Claims against Defendant French**

Defendants seek dismissal of Plaintiff's Title VII discrimination and hostile work environment claims against Defendant French on the ground that Title VII does not impose liability of individuals.  *See* Dkt. No. 59-17 at 10.  Plaintiff acknowledges that this is the law and agrees to the dismissal of these claims against Defendant French.  Accordingly, the Court grants Defendants' motion for summary judgment insofar as they seek dismissal of the Title VII claims against Defendant French.

**C.    Title VII Hostile Work Environment**

*1. Timeliness*

Defendants note that Plaintiff filed his complaint with the EEOC on June 12, 2020. *See* Dkt. No. 59-17 at 11. Because a charge of discrimination must be filed with the EEOC within 300 days after the "alleged unlawful employment practice occurred," Defendants contend that the Court should not consider any alleged conduct that occurred prior to August 17, 2019. *See id.* In response, Plaintiff argues that the continuing violation doctrine permits the Court to consider the alleged behavior outside of the statutory time period. *See* Dkt. No. 66-5 at 13-14.

"Title VII requires a claimant to file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged discriminatory action." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996); *see also* 42 U.S.C. § 2000e–5(e). "'In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the [Equal Employment Opportunity Commission] is 300 days.'" *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010) (quotation omitted); *see also Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999).

However, there is an exception to the 300 day limitations period known as the "continuing violation" exception. Courts have held that "'[u]the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.'" *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 155-56 (2d Cir. 2012) (quoting

6

*Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint–Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011)).

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court limited the scope of the "continuing violation" exception.  There, the plaintiff, an African American employee, alleged that during the period he worked for his defendant-employer he was "consistently harassed and disciplined more harshly than other employees on account of his race." *Id.* at 105.  Some of the alleged discriminatory acts occurred within the 300 day period; while other discriminatory acts occurred outside of the 300 day period.  *See id.*  The district court granted summary judgment as to the plaintiff's claims that were based on the discriminatory acts that fell outside of the 300 day limitations period.  *See id.* at 107.  On appeal, the Ninth Circuit held that the continuing violation doctrine permitted the district court to consider acts of discrimination that fell outside the 300 day deadline so long as they were "sufficiently related" to acts of discrimination that fell inside the 300 day period.  *See id.*  Applying this standard, the Ninth Circuit found that there was a dispute of fact as to whether the allegations by the plaintiff that fell outside of the 300 day period were related to those allegations that fell inside the period.  As such, it found that the district court erred by granting summary judgment and finding some of the plaintiff's claims were time-barred.  *Id.*

In *Morgan*, the Supreme Court unanimously rejected the Ninth Circuit's view.  It found that "discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113.  Rather, the Court found that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*  These "discrete acts" include acts such as "termination, failure to promote, denial of transfer, or refusal to hire are easy

to identify." *Id.* at 114.  Therefore, for these "discrete" acts of discrimination, the continuing violation exception would not be applicable.  *See id.*

However, a divided Court in *Morgan* found that the hostile work environment claims are distinct from other discrimination claims based on "discrete acts" in that "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117.  Therefore, the *Morgan* Court held that:

> It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

*Id.*  Based on this standard, the divided Court in *Morgan* held that it could not say that the acts of harassment that fell outside the 300 day limitations period were "not part of the same actionable hostile environment claim" as those acts of harassment within the 300 day period.  *Id.* at 120-21.

Here, the Court finds that it is only appropriate to consider the acts of harassment that occurred while Plaintiff was assigned to the SOS unit from March 2019 through March 2020.  Even though the conduct occurring before August 17, 2019 is outside the 300 day time period, the Court finds that the allegations relating to Plaintiff's entire time with the SOS unit are sufficiently similar that they represent a continuing violation.  The acts that occurred while Plaintiff was assigned to other units and that generally occurred many years in the past and that were instigated by different individuals have no relation to the acts that occurred while Plaintiff was assigned to the SOS unit, working with entirely different members of the Troy PD.  *See Morgan*, 536 U.S. at 118; *see also McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010) (holding that the continuing violation doctrine did not apply to the plaintiff's hostile work environment claim where the conduct that occurred within the 300 day limitations period was done by a different

8

individual than the prior conduct and where the employer had voluntarily transferred the plaintiff to a different department within the corporation where the plaintiff was no longer subjected to the alleged hostile work environment).  The alleged conduct that occurred prior to March 2019 were discrete acts, unrelated to the hostile work environment that Plaintiff was allegedly subjected to while employed with the SOS unit.  As such, the Court will only consider the alleged conduct that occurred between March 2019 and March 2020.

### 2. Application

In their motion for summary judgment, Defendants argue that Plaintiff has not established that the alleged conduct was sufficiently pervasive or severe necessary to support his hostile work environment claim.  *See* Dkt. No. 59-17 at 14-18.  Defendants contend that, even if the Court were to consider the untimely conduct, Plaintiff has "alleged no greater than twelve (12) instances of conduct that may even remotely be considered to be instances of racial discrimination and/or harassment attributable to City Defendants over the course of his fifteen (15) year career with Troy PD." *Id.* at 17.  Further, Defendants argue that the evidence establishes that the Troy PD had a culture of "ball-busting" from which "no one was spared" and, therefore, there was no disparate treatment based on Plaintiff's race.  *See id.*  In response, Plaintiff contends that his deposition testimony makes clear that he was subjected to a "constant barrage" during his time as a member of the SOS unit, which is sufficient to support his claim.  *See* Dkt. No. 66-5 at 14-15.

To prove a hostile work environment claim, "a plaintiff must establish that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Legg v. Ulster County*, 979 F.3d 101, 114 (2d Cir. 2020) (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)).  "This showing has both

objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also 'subjectively perceive that environment to be abusive.'" *Id.* (quoting *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)).  "Furthermore, the plaintiff 'must demonstrate that the conduct occurred because of' his protected status ... and also that a 'specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 102 (2d Cir. 2020) (quotation omitted).[2]

"'The objective hostility of a work environment depends on the totality of the circumstances,' viewed from 'the perspective ... of a reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target.'" *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (quotation and other citation omitted).  Accordingly, courts must take care "not to view individual incidents in isolation" or "'view the record in piecemeal fashion.'" *Id.* (quotation omitted).  Factors considered as part of the totality of the circumstances include "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance.'" *Legg*, 979 F.3d at 114-15 (quotation omitted).

To be deemed "pervasive," discriminatory incidents "must be more than 'episodic;' they must be sufficiently continuous and concerted." *Agosto*, 982 F.3d at 102 (quotation and other citation omitted).  A single incident may suffice to create a hostile work environment, "but to do

---

[2] The Court notes that Defendants have not specifically argued in their motion for summary judgment that no basis exists to impute liability on the City of Troy/Troy PD as Plaintiff's employer.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  Since this is an affirmative defense, the Court declines to address it *sua sponte*.

10

so it must be 'extraordinarily severe.'" *Id.* (quotation omitted). "'[A] plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions.'" *Rodriguez v. County of Nassau*, 830 Fed. Appx. 335, 339 (2d Cir. 2020) (quoting *Redd*, 678 F.3d at 175). Title VII, however, "'does not set forth a general civility code for the American workplace,'" *Redd*, 678 F.3d at 176 (quotation omitted), and does not "prohibit employers from maintaining nasty, unpleasant workplaces," *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 513 (S.D.N.Y. 2010).

"The question of whether a work environment is sufficiently hostile to violate Title VII is one of fact," and "[s]ummary judgment is appropriate only if it can 'be concluded as a matter of law that no rational juror could view [the defendant's conduct] as ... an intolerable alteration of [the plaintiff's] working conditions.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001) (quotation and other citation omitted). "While this determination may involve difficult line-drawing that is sometimes best left for a jury, ... summary judgment is appropriate 'when reasonable minds could not differ on the issue' of whether a work environment is hostile." *O'Dell v. Trans World Ent. Corp.*, 153 F. Supp. 2d 378, 386 n.3 (S.D.N.Y. 2001) (quotation and other citation omitted), *aff'd*, 40 Fed. Appx. 628 (2d Cir. 2002).

In the present matter, the Court finds that Plaintiff has alleged incidents sufficiently continuous and concerted to support his claim. For example, Plaintiff testified to numerous comments by Sergeant French and Detective Hoover which highlighted his race, and which ridiculed Black men for dating fat white women. *See* Dkt. No. 66-1 at ¶¶ 390, 404-06. Similarly, Plaintiff testified that Sergeant French stated to Plaintiff that "You're always trying to be white by doing white people things," when discussing the fact Plaintiff enjoyed snowmobiling. *See* Dkt.

11

No. 59-2 at 214. Detective Hoover admitted that he had heard comments regarding Black men dating fat white women and that he believed that such comments were appropriately made during "times of ball-busting." Dkt. No. 66-1 at ¶ 391.

Plaintiff also testified that Sergeant French said "Hey, we're looking for a black male with a handgun. Chris, tell your cousin to bring the gun back." Dkt. No. 59-2 at 166-67. Similarly, Plaintiff testified that Sergeant French said "Oh, there was a shooting, two black males or whatever. Chris, it's your people again." *Id.* at 167.

Plaintiff also testified that Detective Hoover stated that the redesigned SOS unit patch should be a spear and a piece of chicken. *See* Dkt. No. 66-1 at ¶ 407; Dkt. No. 59-2 at 112, 166, 224. Also, in December 2019, in the presence of a civilian visitor while Plaintiff was sitting in his office with the lights off, Sergeant French stated "Chris is back there in the room in the dark. Smile so we can see you." *Id.* at ¶ 393.

Although Plaintiff cannot recall all of the specific racially charged comments that were made during his time with the SOS unit, he testified that Sergeant French made such comments on a constant basis, particularly towards the end of his time with the SOS unit. *See* Dkt. No. 59-2 at 165, 169; Dkt. No. 66-1 at ¶ 389. Based on this record, the Court cannot agree with Defendants that the complained of conduct in this case was not sufficiently severe or pervasive to be actionable as a matter of law. *See Hayut v. State Univ. of New York*, 352 F.3d 733, 745-46 (2d Cir. 2003); *Cady v. Cortland*, No. 96-cv-1229, 2000 WL 1456285, *12 (N.D.N.Y. Sept. 19, 2000). Although Title VII was "not intended to sterilize the workplace," *Lucas v. South Nassau Comm. Hosp.*, 54 F. Supp. 2d 141, 147 (E.D.N.Y. 1998), a fact finder could determine that the environment in the SOS unit of the Troy PD was both "objectively and subjectively offensive"

such that "a reasonable person" would have found it to be hostile and abusive "and one that the victim did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

Accordingly, the Court denies Defendants' motion for summary judgment insofar as it seeks dismissal of Plaintiff's Title VII hostile work environment.

**D.     Title VII Discrimination/Constructive Discharge**[3]

Defendants contend that Plaintiff's Title VII discrimination claim must be dismissed because Plaintiff has failed to establish that he suffered an adverse employment action. *See* Dkt. No. 59-17 at 12-14. Rather, Defendants argue that the evidence demonstrates that Plaintiff requested a transfer from the SOS unit to the CPU, which was voluntary, and did not constitute a demotion because his rank, salary, and benefits remained the same. *See id.* at 13. While Defendants acknowledge that Plaintiff may have had different responsibilities in his position with the CPU, those new responsibilities "were, by no means, diminished." *Id.* In response, Plaintiff contends that his transfer from the SOS unit to the CPU was a constructive discharge, sufficient to constitute an adverse employment action. *See* Dkt. No. 66-5 at 22-27. Plaintiff notes that there were several disadvantages to working in the CPU compared to the SOS unit, including the inability to earn special overtime, the inability to be loaned out to task forces outside the Troy PD,

---

[3] Although Plaintiff alleges separate claims of Title VII race discrimination and Title VII "constructive discharge," Plaintiff agrees in his memorandum of law that both claims are predicated on the alleged adverse employment action of his transfer from the SOS unit to the CPU and "submit[s] that the Court's attention should be limited to the events of March 2019-March 2020." Dkt. No. 66-5 at 22. Since the only relevant adverse employment action is the Plaintiff's alleged constructive discharge from the SOS unit, the Court will limit its analysis to whether Plaintiff was constructively discharged, since no other adverse employment action has been alleged within the relevant time frame. Stated another way, Plaintiff's separate causes of action for Title VII discrimination and Title VII constructive discharge are effectively a single cause of action.

better opportunities for career advancement, and the fact that the CPU is considered less prestigious than the SOS unit. *See id.* at 24.

A plaintiff asserting a claim of discrimination under Title VII must establish "1) that he belonged to a protected class; 2) that he was qualified for the position he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (citation omitted). An employee sustains an "adverse employment action" if he "endures a materially adverse change in the terms and conditions of employment.... An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citation and quotation marks omitted). Examples that may constitute adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (quotation omitted).

A constructive discharge is "functionally the same as an actual termination" and, therefore, considered an adverse employment action. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004). "The standard for constructive discharge is a demanding one because it 'cannot be proven merely by evidence that an employee ... preferred not to continue working for that employer ... [or that] the employee's working conditions were difficult or unpleasant.'" *Madray v. Long Island Univ.*, 789 F. Supp. 2d 403, 409-10 (E.D.N.Y. 2011) (quoting *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993)). Rather, the plaintiff must present evidence "(1) that the employer acted deliberately or intentionally in bringing about the

complained of work conditions, and (2) that the conditions were 'intolerable.'" *Id.* (citing *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004)). "[A] 'plaintiff may prove a constructive discharge by establishing that [his] employer, rather than acting directly, deliberately made [his] working conditions so intolerable that [he] was forced into an involuntary resignation, *i.e.*, so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 Fed. Appx. 9, 12 (2d Cir. 2013) (quotations omitted); *see also Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011).

"Where an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff 'must show working conditions so intolerable that a reasonable person would have felt compelled to resign,'" which amounts to a "standard ... higher than a standard for establishing hostile work environment." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (quoting *Suders*, 542 U.S. at 147). As the Second Circuit has noted, "[a] case of 'constructive discharge ... can be regarded as an aggravated case of ... hostile work environment.'" *Pistello v. Bd. of Educ. of Canastota Cent. Sch. Dist.*, 808 Fed. Appx. 19, 24 (2d Cir. 2020) (quotation omitted).

Here, the Court finds that the undisputed facts do not establish that the conditions that Plaintiff experienced while assigned to the SOS unit were "so difficult or unpleasant that a reasonable person" in Plaintiff's shoes would have felt compelled to resign. Rather, considering the totality of the circumstances, Plaintiff has simply established that the conditions in the SOS unit were only such that Plaintiff preferred to be reassigned rather than continuing with the SOS unit.

Moreover, the evidence before the Court does not establish that his "'transfer created a materially significant disadvantage in the terms and conditions of [his] employment'" or that his transfer to the CPU from the SOS unit at his own request was "materially inferior." *Salvana v. New York State Dep't of Corr. & Comm. Supervision*, ___ F. Supp. 3d ___, 2022 WL 3226348, *14 (N.D.N.Y. 2022) (quotation omitted). The evidence establishes that this transfer was not a demotion, as his salary and benefits remained the same, Dkt. No. 66-1 at ¶ 151, he maintained the same rank of detective following his transfer to the CPU, *see id.* at ¶ 3, and, while he may have experienced different responsibilities, his responsibilities were, by no means, diminished. *See id.* Moreover, although Plaintiff contends that only the SOS unit detective are entitled to earn "special overtime," he acknowledges that he was still entitled to earn overtime in his position as a detective in the CPU. *See* Dkt. No. 66-1 at ¶¶ 152, 377. While Plaintiff may have suffered a "bruised ego" as a result of the transfer to the unit of his choosing, it does not constitute an actionable adverse employment action. *See Brown v. City of Syracuse*, 673 F.3d 141, 151 (2d Cir. 2012).

Finally, the Court finds that, in the alternative, his employer deliberately engaged in the alleged conduct that made his working conditions intolerable. Here, the evidence establishes that, immediately upon reporting the alleged hostility he was experiencing to his Union representative and requesting a transfer, Plaintiff was immediately transferred to the CPU. Then, on March 19, 2020, after his transfer to the CPU, Plaintiff finally filed a complaint with Human Resources regarding the alleged conduct directed towards him while in the SOS unit. *See* Dkt. No. 59-15. Moreover, on March 17, 2020, Captain Baker, who was then the supervising officer of the SOS unit, was informed by Sergeant French that several incidents occurred involving Plaintiff that he felt should be reported, including the fact that Plaintiff had overheard Detective Hoover refer to

another officer from an outside agency as an "N-word," as well as Sergeant French's own conduct towards Plaintiff. Dkt. No. 59-4 at 46-56. Upon learning about these incidents (for the first time), Captain Baker immediately informed Deputy Chief DeWolf, as required by Troy PD's anti-harassment policy. After a meeting between Sergeant French, Captain Baker, Deputy Chief DeWolf, and Chief Owens, it was determined that Plaintiff should be informed that, if he would like to file a complaint, it should be directed to City Hall. *See id.* at 56. Plaintiff filed his complaint at some point thereafter, and an investigation was undertaken by Gabrielle Mahoney. *See id.*; *see also* Dkt. No. 66-1 at ¶¶ 92-93. Such evidence undermines any argument that the City of Troy or the Troy PD deliberately brought about the working conditions of which Plaintiff complains. *See Campbell v. New York City Transit Auth.*, 93 F. Supp. 3d 148, 172 (E.D.N.Y. 2015) (finding that the plaintiff failed to establish that his employer deliberately brought about the conditions that led to her alleged constructive discharge where the evidence established that the plaintiff was transferred to another reporting location following her complaints about her working conditions, thereby undermining the claim that the defendant deliberately brought about the working conditions).

Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's Title VII discrimination/constructive discharge claims.

E.    **Sections 1981 and 1983 Hostile Work Environment**

Plaintiff also brings claims of hostile work environment pursuant to 42 U.S.C. §§ 1981 and 1983. Defendants acknowledge that the standards are the same for claims brought under both Title VII and Sections 1981 and 1983. *See* Dkt. No. 59-17 at 19. As such, Defendants contend that, since Plaintiff's Title VII hostile work environment claim must be dismissed, the same is required of the Section 1981 claim. As set forth above, questions of fact preclude summary

judgment as to Plaintiff's Title VII hostile work environment claim. Since Defendants have raised no additional arguments with respect to the Section 1981 claim, the Court denies this aspect of Defendants' motion for summary judgment. *See Littlejohn v. City of New York*, 765 F.3d 297, 320 (2d Cir. 2015).

As to the Section 1983 claim brought against only the Estate of Sergeant French, Defendants contend that "the only alleged racially discriminatory or harassing remark specifically attributed to French in the Complaint is 'Johnson is back there in the dark; Johnson, smile so we can see you back there.'" Dkt. No. 59-17 at 20. Defendants argue that this single, isolated statement does not rise to the level of creating a hostile work environment. *See id.*

First, this matter comes before the Court on a motion for summary judgment, not a motion to dismiss. Therefore, the fact that the complaint only specifically attributes a single comment to Sergeant French is not determinative. Rather, what matters now is the facts set forth in the summary judgment record. As set forth above, the evidence before the Court attributes a considerable number of racially insensitive remarks to Sergeant French. This includes both those specifically addressed above, as well as the "numerous" other incidents that Plaintiff could not specifically recall during his deposition. Considering that nearly all of the conduct set forth above that was found to be sufficient to support Plaintiff's Title VII hostile work environment claim was attributed to Sergeant French, the Court finds that it is also sufficient to set forth a viable Section 1983 hostile work environment claim against Sergeant French.

Accordingly, the Court denies this aspect of Defendants' motion for summary judgment.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**;[4] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 17, 2023
　　　Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[4] As a result of this Memorandum-Decision and Order, the following claims remain: Title VII hostile work environment, Section 1981 hostile work environment, and Section 1983 hostile work environment.